IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term

Grand Jury Sworn in on January 8, 2020

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | GRAND JURY ORIGINAL |
| | : | |
| KENNETH PATRICK GAUGHAN | : | VIOLATIONS: |
| *also known as Richard Strauski,* | : | |
| | : | 18 U.S.C. § 1341 (Mail Fraud); |
| Defendant. | : | 18 U.S.C. § 1343 (Wire Fraud); |
| | : | 18 U.S.C. § 1957 (Monetary |
| | : | Transaction of Criminally Derived |
| | : | Property); |
| | : | 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), |
| | : | 21 U.S.C. § 853(p), 28 U.S.C. § 2461(c) |
| | : | (Criminal Forfeiture). |

**INDICTMENT**

The Grand Jury charges that:

**Introduction**

At all times relevant to this Indictment:

1.  Defendant **KENNETH PATRICK GAUGHAN** ("GAUGHAN"), also known as Richard Strauski, a resident of Washington, DC, was employed as the Director of Counseling and Assistant Superintendent of the Archdiocese of Washington, DC ("ADW"), headquartered in Hyattsville, Maryland.

2.  ADW oversaw approximately 95 Catholic schools that educated approximately 27,000 children in the District of Columbia and multiple counties in Maryland. ADW also

provided counseling, shelter, adoption and foster care, health care, immigration and legal aid, and affordable housing to members of the community.

3. **GAUGHAN** began working for ADW in 2008, as its Director of Counseling. In 2013, ADW promoted **GAUGHAN** to be an Assistant Superintendent of ADW, entrusting **GAUGHAN** with additional responsibilities. In these roles, **GAUGHAN** had the duty to recruit and act as the point of contact for vendors who could provide various services to ADW, including vendors to help ADW implement anti-bullying, crisis intervention, professional development, and mass messaging programs for its schools.

4. As the Director of Counseling and Assistant Superintendent of ADW, **GAUGHAN** was entrusted with obtaining invoices for services from certain vendors and providing those invoices and supporting documentation regarding requests for payment to his superiors at ADW. By submitting the requisite invoices and documentation, **GAUGHAN** indicated to his supervisors that the services were appropriate, had been rendered, and justified payment.

5. **GAUGHAN**'s supervisors relied on his recommendations on the appropriateness of the invoices, supporting documentation, and payment requests due to **GAUGHAN**'s status as a long-term, trusted employee of ADW.

6. ADW maintained employment policies regarding conflicts of interest that prohibited **GAUGHAN** and other employees from expending funds belonging to ADW and its schools for personal gain. **GAUGHAN** acknowledged to ADW that he received, reviewed, and agreed to ADW's employment policies. In or around June 2016, **GAUGHAN** certified to ADW that he did not hold 5% or more interest in an entity that transacted business with ADW.

## COUNTS ONE THROUGH FIVE
(Mail Fraud)

7. Paragraphs 1 through 6 are hereby realleged as if fully set forth herein.

### The Scheme to Defraud

8. Between at least in or about June 2010 and in or about April 2018, in the District of Columbia and elsewhere, **GAUGHAN** devised and executed a scheme to defraud ADW, and to obtain money and property from ADW, by means of materially false and fraudulent pretenses, representations, and promises, with intent to defraud and knowledge of the scheme's fraudulent nature ("the scheme to defraud").

### Goal of the Scheme to Defraud

9. It was a goal of the scheme to defraud that **GAUGHAN** would take money from ADW to which he was not entitled through false representations, totaling over $472,832, and spend the money for his own personal benefit and enjoyment.

### Manner and Means of Scheme to Defraud

It was part of the scheme to defraud that:

### GAUGHAN's Receipt of More than $60,000 Through a Fake Youth Counseling Company

10. In or around 2010, **GAUGHAN** presented Soulutions Counseling for Youth ("SCY"), a company that **GAUGHAN** had created, to ADW as a vendor for anti-bullying, crisis intervention, and professional development programs. **GAUGHAN** failed to disclose his ownership and control of SCY, and submitted an IRS form for SCY to ADW displaying the signature of his alias, "Richard Strauski," and an address in the District of Columbia.

11. **GAUGHAN** failed to register SCY to do business in the District of Columbia.

12. Beginning around May 2010, **GAUGHAN** persuaded ADW officials to issue checks to pay SCY, falsely representing that the company provided anti-bullying, crisis intervention, and professional development services. On or about June 10, 2010, **GAUGHAN** opened a PNC Bank account ending in 5615 ("PNC 5615") in the name of SCY and using as the company's address a mailbox at a UPS store in the District of Columbia. **GAUGHAN** was the sole signatory on the bank account.

13. Between in or about Spring 2010 and continuing through in or about Fall 2016, **GAUGHAN** tricked ADW into issuing 14 checks for more than $60,000 by submitting false invoices, concealing his ownership and control of SCY, and representing that SCY provided anti-bullying, crisis intervention, and professional development services that **GAUGHAN** knew SCY did not provide. **GAUGHAN** knew and reasonably foresaw that ADW would mail checks in the ordinary course of business via the U.S. Postal Service.

14. Between in or about June 2010 and Fall 2016, **GAUGHAN** deposited and caused to be deposited these 14 checks into PNC 5615, thereafter using the money to pay his own personal debts and for his own personal use.

**GAUGHAN's Receipt of Over $390,000 Through False Invoices from Company 1**

15. On or about June 22, 2011, **GAUGHAN** submitted documents to the State of Oregon organizing a limited liability company, identified in this Indictment as "Company 1."

16. On or about June 22, 2011, in the District of Columbia, **GAUGHAN** opened a PNC Bank account ending in 4978 ("PNC 4978") in the name of Company 1 and used as Company 1's mailing address a virtual mailbox that he established and controlled. **GAUGHAN** was the sole signer on the bank account.

17. **GAUGHAN** falsely presented to ADW, as services provided by Company 1, online programming that was, in fact, provided by a company based in Georgia, and that **GAUGHAN** obtained for less than $16,000.

18. Between in or about June 2011 and December 2017, **GAUGHAN** tricked ADW officials into issuing 11 checks worth a total of $391,385.50 by providing false invoices, making misrepresentations that Company 1 performed work for other Catholic Archdioceses, concealing his ownership and control of Company 1, and representing that Company 1 provided anti-bullying and crisis counseling programs that **GAUGHAN** knew that Company 1 did not provide.

19. Between in or about June 2011 and in or about December 2017, **GAUGHAN** deposited and caused to be deposited the checks ADW made out to Company 1 into PNC 4978, then spent the money for his own personal use.

### GAUGHAN's Imitation of a Mass Messaging Service Company

20. While ADW had an ongoing contract with a mass messaging service company to provide information via text message and automated telephone calls—for instance, information related to a blizzard, flood, or active shooter—to ADW's students and parents, **GAUGHAN** filed a trade name application with the Nebraska Secretary of State using the same name used by the messaging service company for its software application, and with his alias Richard Strauski ("Company 2").

21. In March 2018, **GAUGHAN** opened a virtual mailbox in the name of Company 2 with directions that the mail be forwarded to "Ken Gaughan" at his home address in the District of Columbia.

22. In April 2018, **GAUGHAN**, concealing his ownership and control of Company 2, submitted a false invoice to ADW making it appear that Company 2 was providing the mass messaging service to ADW. The invoice requested $21,060 for services that were allegedly provided by Company 2, which **GAUGHAN** knew had not been provided as represented.

23. In April 2018, **GAUGHAN** opened accounts at Bank of America, ending in 7460 and 7473 ("BoA 7460" and "BoA 7473") held in the name of "DBA [doing business as] [Company 2] . . . Kenneth P. Gaughan Proprietorship." **GAUGHAN** was the sole signer on both accounts.

24. On or about April 17, 2018, **GAUGHAN** deposited and caused to be deposited the $21,060 ADW check, obtained through **GAUGHAN**'s false representations to ADW.

### GAUGHAN's Certification of No Conflict of Interest

25. On or about June 30, 2016, **GAUGHAN** signed and submitted to ADW a conflict of interest statement falsely certifying that he did not have an official relationship as an officer, director, employee, partner, proprietor, or holder of 5% or more interest in an entity that transacted business with ADW, and that, as an individual, he did not transact any business, directly or indirectly, with ADW.

### The Charges

26. On or about the dates set forth below, in the District of Columbia and elsewhere, the defendant,

**KENNETH PATRICK GAUGHAN,**
also known as Richard Strauski,

for the purpose of executing and attempting to execute the scheme to defraud, knowingly caused to be deposited into the mail, and delivered by mail and by private and commercial interstate carrier, the following matters, in the form of envelopes containing the following checks:

| Count | Date | Description |
|---|---|---|
| 1 | September 23, 2016 | Check number 35821 from ADW to SCY for $1,600. |
| 2 | September 23, 2016 | Check number 35768 from ADW to Company 1 for $22,275. |
| 3 | February 10, 2017 | Check number 38494 from ADW to Company 1 for $22,275. |
| 4 | December 7, 2017 | Check number 43905 from ADW to Company 1 for $2,000. |
| 5 | April 6, 2018 | Check number 45889 from ADW to Company 2 for $21,060. |

(Mail Fraud, in violation of Title 18,
United States Code, § 1341).

## COUNTS SIX THROUGH ELEVEN
(Wire Fraud)

27. Paragraphs 1 through 25 are hereby realleged as if fully set forth herein.

28. On or about the dates set forth below, in the District of Columbia and elsewhere, the defendant,

**KENNETH PATRICK GAUGHAN,**
also known as Richard Strauski,

for the purpose of executing and attempting to execute the scheme to defraud ADW, transmitted and caused to be transmitted by means of wire communication in interstate commerce, the following writings, signs, signals, pictures, and sounds:

| Count | Date | Description |
|---|---|---|
| 6 | October 20, 2015 | An interstate wire signal originating from the District of Columbia generated by **GAUGHAN**'s deposit of Check Number 29528, written from ADW's bank account in the amount of $1,500, and deposited into PNC 5615. |
| 7 | May 10, 2016 | An interstate wire signal originating from the District of Columbia generated by **GAUGHAN**'s deposit of Check Number 33382, written from ADW's bank account in the amount of $2,100, and deposited into PNC 5615. |
| 8 | August 7, 2015 | An interstate wire signal originating from the District of Columbia generated by **GAUGHAN**'s deposit of Check Number 27777, written from ADW's bank account in the amount of $45,549, and deposited into PNC 4978. |
| 9 | March 17, 2016 | An interstate wire signal originating from the District of Columbia generated by **GAUGHAN**'s deposit of Check Number 32491, written from ADW's bank account in the amount of $22,774.75, and deposited into PNC 4978. |
| 10 | February 21, 2017 | An interstate wire signal originating from the District of Columbia generated by **GAUGHAN**'s deposit of Check Number 38494, written from ADW's bank account in the amount of $22,275, and deposited into PNC 4978. |
| 11 | April 17, 2018 | An interstate wire signal originating from the District of Columbia generated by **GAUGHAN**'s deposit of Check Number 45889, written from ADW's bank account in the amount of $21,060, and deposited into BOA 7460. |

**(Wire Fraud, in violation of Title 18, United States Code, § 1343).**

## COUNT TWELVE
### (Monetary Transaction of Criminally Derived Property)

29. Paragraphs 1 through 25 are hereby realleged as if fully set forth herein.

30. On or about August 11, 2015, in the District of Columbia, the defendant,

**KENNETH PATRICK GAUGHAN,**
also known as Richard Strauski,

did knowingly engage and attempt to engage in a monetary transaction by, through, and to a financial institution in and affecting interstate commerce in criminally derived property that was of a value greater than $10,000, and was derived from specified unlawful activity (specifically, wire fraud, in violation of 18 U.S.C. § 1343) at PNC Bank, a financial institution, in that the defendant transferred and caused to be transferred $12,000 from PNC 4978 to PNC 5615.

**(Monetary Transaction of Criminally Derived Property,
in violation of Title 18, United States Code, § 1957).**

## **FORFEITURE ALLEGATION**

1. Upon conviction of any of the offenses listed in Count One through Count Eleven of this Indictment, the defendant shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). The United States will also seek a forfeiture money judgment against the defendant in the amount of at least $472,832.95.

2. Upon conviction of the offense alleged in Count Twelve of this Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in this offense or any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1). The United States will also seek a forfeiture money judgment against the defendant in the amount of at least $12,000.00.

3. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to Title 21, United States Code, Section 853(p).

(**Criminal Forfeiture,** pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18, United States Code, Section 982(a)(1), Title 28, United Sates Code, Section 2461(c), and Title 21, United States Code, Section 853(p))

A TRUE BILL:

FOREPERSON

*Michael R. Sherwin* /jpc
Attorney of the United States in
and for the District of Columbia