UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES**,<br><br>v.<br><br>**KENNETH GAUGHAN**,<br><br>Defendant. | Criminal Nos. 21-cr-00390 (TSC)<br>20-cr-00128 (TSC) |

**OPINION AND ORDER**

In March 2022, Kenneth Gaughan pleaded guilty to two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of money laundering, in violation of 18 U.S.C. § 1957. Plea Agreement, No. 21-cr-390, ECF No. 58; Plea Agreement, No. 20-cr-128, ECF No. 40.[1] At sentencing, the court calculated the appropriate guidelines range as 78 to 97 months, based on an offense level of 28 and zero criminal history points, placing him in criminal history category I. Sent'g Tr. 12:19–14:08, No. 21-cr-390, ECF No. 93; Sent'g Tr. 12:19–14:08, No. 20-cr-128, ECF No. 74. The court imposed a sentence at the low end of the guidelines range: 78 months incarceration on each count, to run concurrently, and 36 months supervised release. J. at 1–3, No. 21-cr-00390, ECF No. 84; J. at 1–3, No. 20-cr-00128, ECF No. 64. Gaughan's current release date is July 1, 2027.

---

[1] Gaughan entered into a plea agreement that resolved two parallel proceedings; he pleaded guilty to Count Eight, Wire Fraud in violation of 18 U.S.C. § 1343, in the Indictment in Criminal Case Number 21-cr-00390, and to Count One, Wire Fraud in violation of 18 U.S.C. § 1343, and Count Eleven, Money Laundering in violation of 18 U.S.C. § 1957, in the Indictment in Criminal Case Number 20-cr-00128. The court sentenced him in both actions and ordered the sentences to run concurrently.

Gaughan now asks the court to reduce his sentence from 78 months incarceration to 63 months incarceration under 18 U.S.C. § 3582(c) and pursuant to the recently adopted Adjustment for Certain Zero-Point Offenders in Sentencing Guidelines Manual ("U.S.S.G.") § 4C1.1. Mot. to Reduce Sent., No. 21-cr-390, ECF No. 94; Mot. to Reduce Sent., No. 20-cr-128, ECF No. 75 (collectively, "Mot."); Suppl. to Mot., No. 21-cr-390, ECF No. 103; Suppl. to Mot., No. 20-cr-128, ECF No. 83 (collectively, "Suppl."). The Government opposes. Gov't Opp'n to Def.'s Mot., No. 21-cr-390, ECF No. 96; Gov't Opp'n to Def.'s Mot. to Reduce Sent., No. 20-cr-128, ECF No. 76 (collectively, "Opp'n").[2] Gaughan satisfies the zero-point offender criteria for a reduction, and the court finds the § 3553(a) factors support a moderate sentence reduction. Defendant's motion to reduce his sentence is therefore GRANTED in part.

## I.     LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(2), the court may modify a term of imprisonment if the defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." The court follows a two-step inquiry. *Dillon v. United States*, 560 U.S. 817, 826–27 (2010); U.S.S.G. § 1B1.10 (U.S. Sent'g Comm'n 2024).

First, the court determines the defendant's "eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. This entails calculating the applicable guideline range had the relevant amendment been in effect at the time of the original sentencing. *Id.* The court may not reduce the sentence to less than the minimum term of the amended guideline range. *Id.* Gaughan relies on Amendment 821, which took effect in November 2023. Sent'g Guidelines for the U.S. Courts, 88 Fed. Reg. 60534-02 (Sep. 1, 2023). Amendment 821 created

---

[2] Gaughan and the Government filed their respective briefs on both dockets. Accordingly, the court will cite to the parties' briefings without identifying the specific docket.

§ 4C1.1 in the Sentencing Guidelines Manual. *Id.* It "provides for a two-level reduction of the total offense level if 'the defendant did not receive any criminal history points' and meets several other eligibility criteria." *United States v. Bauer*, 714 F. Supp. 3d 1, 4 (D.D.C. 2024) (quoting U.S.S.G. § 4C1.1). The Sentencing Commission determined the change would apply retroactively. *Id.*; *United States v. Dawodu*, No. 21-cr-145, 2023 WL 3104759, at *2 (D.D.C. June 24, 2024) ("The Sentencing Commission made 4C1.1 retroactive, so that a defendant who has already been sentenced may seek relief from the sentencing court.").

If a defendant would have been eligible for the two-level reduction under § 4C1.1 had Amendment 821 taken effect before their sentencing, the court must then "consider whether the authorized reduction is warranted, either in whole or in part, according to the factors set forth in § 3553(a)." *Dillon*, 560 U.S. at 826.

## II.   ANALYSIS

The parties agree that Gaughan qualifies for a sentence reduction as a zero-point offender under § 4C1.1. Mot. at 1; Opp'n at 1. The court reaches the same conclusion. The Sentencing Commission "subsequently . . . lowered" the guidelines range used to calculate Gaughan's sentence by adopting Amendment 821. 18 U.S.C. § 3582(c)(2); *see also Bauer*, 714 F. Supp. 3d at 4. He did not receive any criminal history points, Sent'g Tr. 13:01–12, and is not otherwise precluded from receiving § 4C1.1's two-level reduction. *See* U.S.S.G. § 4C1.1(a) (precluding defendants with certain offenses, enhancements, or conduct from receiving the zero-point offender reduction). If Amendment 821 had taken effect before Gaughan's sentencing, he would have received a two-level reduction, resulting in a final offense level of 26. Mot. at 4; Opp'n at 9. With an offense level of 26 and a criminal history category of I, his guideline range would have been 63 to 78 months of imprisonment. *Id.* Therefore, the court may reduce Gaughan's sentence to 63 months, the minimum of the amended guideline range, under 18 U.S.C. § 1582(c)(2).

That does not conclude the inquiry, however. At step two, the court must consider whether the applicable § 3553(a) factors warrant a sentence reduction. *Id.*; *Dillon*, 560 U.S. at 827. Those factors include (1) the nature and circumstances of the offense, (2) the history and characteristics of the defendant; (3) the need for the sentence imposed; (4) the kinds of sentences available; (5) the sentencing range established; (6) any Sentencing Commission policy statements; (7) the need to avoid sentencing disparities among defendants; and (8) the need to provide restitution. 18 U.S.C. § 3553(a). Gaughan argues that the court already determined that these factors supported a sentence at the low end of the guidelines range when it imposed his original sentence and urges the court to carry that conclusion over to reduce his sentence to the low-end of the amended guidelines range. Mot. at 4.

Based on the nature and circumstances of the offense, Gaughan's history and characteristics, the need for the sentence to protect the public and rehabilitate the defendant, and the available sentencing range, the court concludes a sentence reduction is appropriate, but not to the extent that Gaughan seeks. Gaughan committed serious and harmful offenses. He abused his position of trust in a non-profit organization and exploited public efforts to alleviate the devastating impact of the COVID-19 pandemic by defrauding the non-profit organization and the federal government of more than $2,500,000. Presentence Report ("PSR") at 6–8, 13, No. 21-cr-390, ECF No. 64; Sent'g Tr. 7:10–14 (adopting facts in the Presentence Report). As an official at the Archdiocese of Washington, Gaughan directed funds to entities that he controlled under false pretenses that such entities would provide anti-bullying, crisis intervention, and professional development programs. PSR at 6–8. Gaughan was prosecuted in the District of Maryland on charges related to the fraud perpetrated against the Archdiocese, but he narrowly escaped conviction on a jurisdictional technicality. *See* PSR at 17. Not long after, Gaughan launched into

another fraudulent scheme against the federal government, which dwarfed his prior embezzlement. PSR at 9. He used entities purporting to work with service and emotional support animals to obtain millions in loans under the Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") program. PSR at 9, 12. Gaughan perpetrated the fraud for years, resulting in millions of dollars in ill-gotten gains. *See* PSR at 7.

Gaughan's history and characteristics, particularly his post-sentencing conduct, the need for the sentence to protect the public and rehabilitate the defendant, and the sentencing range applicable today, support a moderate sentence reduction, however. To counteract his history of fraudulent activity, Gaughan points to his post-sentencing rehabilitation, which the court may consider when evaluating a sentence reduction. *See* U.S.S.G. § 1B1.10 Cmt. 1(B)(iii). While incarcerated, Gaughan has enrolled in more than 20 educational classes, volunteered to teach classes to other prisoners; completed over 6,000 hours for an electrician apprenticeship program; played music during events, such as GED graduations and religious services, made timely payments toward his restitution, and maintained an "unblemished disciplinary record." Mot. at 4–5; Suppl. at 1. Such post-sentencing conduct supports the conclusion that a sentence reduction is warranted. *United States v. Haire*, 136 F. Supp. 3d 1, 3 (D.D.C. 2015) (granting sentence reduction under § 3582(c) for "ideal inmate, with only one disciplinary infraction" who "has completed an impressive number of educational and vocational courses"). Gaughan is to be commended for using his time productively while in a controlled and restrictive environment. At sentencing, the court expressed genuine concerns about recidivism, Sent'g Tr. 56:6–57–09, but BOP's determination that Gaughan poses a "minimum" risk of recidivism because he has embraced "rehabilitative programming and tak[en] full ownership and responsibility of his term of imprisonment" provides some reassurance, Mot. Ex. 1 at 15. The court cannot ignore, however,

Gaughan's prior behavior. He positively contributed to the Archdiocese of Washington with one hand and stole from it with the other. Sent'g Tr. 56:6–57:09. The same is true for his post-sentencing rehabilitation—it does not erase his broader history and characteristics.

When the court sentenced Gaughan, it considered—as it must—the applicable Sentencing Guideline range and concluded that a sentence within the guidelines was warranted. But in choosing the actual period of incarceration, the court's focus was not whether the sentence was at the top or the bottom of the range, but on a particular time period that it believed was justified based on all the factors set forth in 18 U.S.C. § 3553(a). That number, 78 months, was within the guidelines in effect at sentencing (78 to 97 months), and is still within the revised guidelines (63 to 78 months). In light of Gaughan's extensive rehabilitative efforts and the corresponding low risk of recidivism, however, the court is persuaded that a sentence of seventy (70) months is "sufficient, but not greater than necessary" to fulfill the purposes identified in Section 3553(a)(2).

### III.   CONCLUSION

For these reasons, Defendant's Motion to Reduce his Sentence under 18 U.S.C. § 3582(c)(2) is GRANTED in part. Defendant's sentence is reduced to seventy (70) months of incarceration. All other terms of the Judgment are unaffected and remain in place.

Date: August 12, 2025

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge